# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (DAYTON)

| | |
|---|---|
| DAISCIA N. REDMAN, | : Case No. 3:25-cv-351 |
| Plaintiff, | : District Judge Thomas M. Rose |
| vs. | : Magistrate Judge Caroline H. Gentry |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTIONS, et al., | : |
| Defendants. | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, a prisoner at the Dayton Correctional Institution (DCI), filed a pro se civil rights Complaint in this Court on October 17, 2025. (Doc. 1). On November 24, 2025, Plaintiff filed a Motion to Supplement Complaint (Doc. 7), which is hereby **GRANTED**. On December 5, 2025, Plaintiff provided the financial certificate that enables her to proceed *in forma pauperis*, which motion was granted by separate order.

This matter is before the undersigned Magistrate Judge for the required initial screen of the Complaint and Supplemental Complaint to determine whether these pleadings, or any portion of them, should be dismissed because they are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

## Screening of Plaintiff's Complaint

### A. Legal Standard

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(1), which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, Section 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

---

[1] Formerly 28 U.S.C. § 1915(d).

To state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent

3

standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### B. Allegations in the Complaint (Doc. 1) & Supplemental Complaint (Doc. 7)

Plaintiff alleges that Defendants have unlawfully failed to protect her from harm inflicted by another inmate and have retaliated against her. Plaintiff names as Defendants the Ohio Department of Rehabilitation and Corrections (ODRC), inmate Tamara McLoyd, Institutional Investigator Chris Case, DWO Katie Nixon, Institutional Inspector Wesley Gaddis, Lieutenants Adleta and Shonks, and Unit Managers Gilbert and Allen.

Plaintiff alleges that in August of 2024 she asked to be moved from her cell due to fear of her safety. Specifically, Plaintiff sought protection from her cellmate Tamara McLoyd—a named Defendant to this action—who Plaintiff claims was violent, delusional, and stole Plaintiff's personal property. Plaintiff alleges that she brought the issues with McLoyd to the attention of Defendant Unit Manager Gilbert multiple times. Nevertheless, Plaintiff claims that from August to November 1, 2024, "McLoyd had bitten me, cut me with razors, burned me with a hair straightener, stabbed me with a pencil, pulled me head first off the top bunk" and choked her to the point that she was rendered unconscious on five occasions. (*Id.*). Plaintiff alleges that her interactions with McLoyd resulted in significant injuries, including concussions and visible wounds

4

throughout her body. Plaintiff claims McLoyd also forced sexual acts on her, claimed to "own" Plaintiff, and threatened to kill Plaintiff if she reported her or moved cells.

Plaintiff alleges that on November 1, 2024, after McLoyd threatened her with a blade, she "finally demanded a bed move from Operations Staff." (*Id.* at PageID 5). In the Supplemental Complaint, Plaintiff alleges that previously she repeatedly requested that unit staff separate her from McLoyd and reported the issue(s) in multiple grievances to Defendant Institutional Inspector Gaddis, but Gaddis denied the grievances and refused to allow Plaintiff to escalate them. (Doc. 7 at PageID 37-38). Upon moving cells, Plaintiff claims McLoyd stole multiple items from her and broke her television. (Doc. 1 at PageID 5). Plaintiff claims she immediately reported the issues with her property to Defendant Lt. Shonks. Although Shonks allegedly conducted a cell search and found several stolen items in McLoyd's possession, Plaintiff claims Shonks refused to confiscate them.

According to Plaintiff, during the following months McLoyd has stalked and harassed her. Apparently during this time, Plaintiff claims that McLoyd also "sexually assaulted me by coming out of place from her housing unit, to mine, locking herself into my cell and refusing to leave." (*Id.* at PageID 6). On one occasion, Plaintiff alleges that several officers and Gilbert were present and physically restrained McLoyd after she threatened to stab Plaintiff. (Doc. 7 at PageID 38). And although several conduct reports were written against McLoyd based on her threats of physical violence, Plaintiff claims security staff refused to place McLoyd in restrictive housing. (Doc. 1 at PageID 6).

In February 2025, Plaintiff claims that McLoyd assaulted her again, causing injuries to Plaintiff and resulting in McLoyd's placement in restrictive housing. Although

5

the details are not entirely clear from the Complaint, Plaintiff alleges that despite reporting her ongoing issues with McLoyd and requesting a separation order, Plaintiff and McLoyd both ended up in restrictive housing in March 2025. (*See id.* at PageID 6-7). Plaintiff claims Defendants DWO Katie Nixon and Unit Manager Allen denied her a separation order and Defendants Case and Shonks had her placed in restrictive housing, where she claims she "endured 29 days in RH with McLoyd," during which Plaintiff claims she was harassed and assaulted. (*Id.* at PageID 9). Plaintiff claims that no one at the institution acted to keep her safe from McLoyd, resulting in alleged sexual and physical assaults on August 17, 2025 and August 20, 2025.

     Plaintiff also claims that she has been retaliated against for reporting her issues with McLoyd and filing grievances. Plaintiff alleges that she previously had no rules infraction board tickets but has since accumulated tickets that are all related to McLoyd. For example, Plaintiff alleges that in January 2025, she reported that McLoyd pushed her down a set of stairs and Sgt. Shonks retaliated against her by placing Plaintiff in restrictive housing for reporting the assault and stating she would escalate the incident to a superior officer after Shonks declined to take action. (*See* Doc. 7 at PageID 38-39). Plaintiff alleges that Investigator Case issued a conduct report against her for allegedly reporting an assault by McLoyd in March 2025. (*Id.* at PageID 39-40). Plaintiff claims that the conduct report was issued "for allegedly aiding McLoyd in coming in[to] my cell to attack me." (*Id.* at PageID 40).[2] Plaintiff also claims that Defendant Adleta and Gaddis

---

2 Around the same time, Plaintiff alleges that McLoyd arranged for contraband to be sent to the facility in Plaintiff's name. According to Plaintiff, Case—who she alleges protects McLoyd from

6

retaliated against her by improperly taking her property. (Doc. 1 at PageID 9-10). Finally, Plaintiff claims Defendant DWO Katie Nixon refused to implement a separation order between her and McLoyd. Instead, Plaintiff claims that on October 1, 2025, Nixon tried to manipulate her into signing a form that would result in Plaintiff being transferred to another institution. (*Id.* at PageID 10). Plaintiff claims that when she refused to sign the document, Nixon placed restrictions on her tablet preventing her from accessing mail, news, the law library, kites or grievances.

In the Supplemental Complaint, Plaintiff alleges that she was again placed in the same housing unit with McLoyd from November 4, 2025, until November 11, 2025. (*See* Doc. 7 at PageID 42). Plaintiff alleges that she requested protective custody from staff—including Defendants Allen—to no avail. (*Id.* at PageID 41-42). According to Plaintiff, Nixon provided a decision regarding Plaintiff's protective custody placement but refused to provide her with a form to appeal the decision. Plaintiff claims she sent a kite to multiple individuals regarding the appeal form but no one responded. (Doc. 1 at PageID 12).

Plaintiff seeks injunctive relief and monetary damages. (*Id.* at PageID 13).

### C. Analysis

At this juncture in the proceedings, without the benefit of briefing by the parties to this action, the undersigned Magistrate Judge concludes that Plaintiff may proceed with

---

infractions—placed her in restrictive housing based on the incident. According to Plaintiff, "McLoyd arranged this so I could be placed in RH as revenge for continuously reporting her." (*Id.* at PageID 8).

7

her claims in the Complaint and Supplemental Complaint against Defendants Case, Nixon, Gaddis, Shonks, Adleta, Allen, and Gilbert, based on allegations that these Defendants failed to protect her from harm and/or retaliated against her.[3] However, for the reasons below, Plaintiff's claims against the remaining Defendants should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

First, the Court should dismiss all claims against Defendant ODRC. Title 42 U.S.C. § 1983 provides that "[e]very person who, under the color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. With respect to the ODRC, a correctional facility or department of corrections is not a "person" subject to suit under 42 U.S.C. § 1983. *See Parker v. Michigan Dept. of Corrections,* 65 F. App'x 922, 923 (6th Cir. 2003) (Department of Corrections not a "person" under § 1983). *See also, e.g., McGlone v. Warren Corr. Inst.,* No. 1:13cv126, 2013 WL 1563265, at *3 (S.D. Ohio Apr. 12, 2013) (Bowman, M.J.) (Report & Recommendation) (and numerous cases cited therein) (holding that claims against a state prison and the ODRC should be dismissed at the screening stage because "neither the state prison facility nor the state corrections department is an entity capable of being sued under § 1983"), *adopted*, 2013 WL

---

[3] The Court has not made a determination as to the merits of the claims or potential defenses thereto, nor are Defendants precluded from filing a motion to dismiss, motion for more definite statement, or other appropriate motion under the Federal Rules of Civil Procedure. *See, e.g., Wiley v. Austin*, No. 8:20CV220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

8

2352743 (S.D. Ohio May 29, 2013) (Dlott, J.); *see also Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355-56 (6th Cir. 2006) (and cases cited therein); *Rodgers v. Michigan Dep't of Corr.*, 29 F. App'x 259, 260 (6th Cir. 2002). Accordingly, the Complaint should be dismissed against the ODRC.

Plaintiff's Section 1983 claims against inmate McLoyd should also be dismissed. In order to maintain an action under § 1983, Plaintiff must allege that a defendant acted under color of state law. *Graham v. National Collegiate Athletic Ass'n*, 804 F.2d 953, 957 (6th Cir. 1986) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986)). Plaintiff's Complaint fails to allege any facts showing that inmate McLoyd acted under color of state law.

Finally, to the extent that Plaintiff seeks to assert a procedural due process claim based upon the confiscation or destruction of her property, Plaintiff's claim should be dismissed. To assert such a claim, Plaintiff must first "plead . . . that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). *See also Hudson v. Palmer*, 468 U.S. 517 (1984). "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson County Pub. Sch. Sys.,* 360 F.3d 583, 587-88 (6th Cir. 2004). Accordingly, in order to state a procedural due process claim under Section 1983, "the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (quoting *Vicory*, 721 F.2d at 1066). A plaintiff "may not seek relief under Section 1983

9

without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations." *Jefferson*, 360 F.3d at 588.

Here, Plaintiff has not alleged any facts that indicate her remedies under Ohio law to redress the wrong of which she complains were inadequate. Plaintiff's Complaint fails to explain why a state tort remedy for conversion would not suffice to address her property claims. *See Fox v. Van Oosterum,* 176 F.3d 342, 349 (6th Cir. 1999). Therefore, at this juncture she has failed to state a Fourteenth Amendment due process claim that is actionable under Section 1983.

In sum, Plaintiff may proceed with the development of her First Amendment retaliation and Eighth Amendment failure-to-protect claims against Defendants Case, Nixon, Gaddis, Shonks, Adleta, Allen, and Gilbert. However, Plaintiff has failed to provide completed summons and U.S. Marshal forms for service on these Defendants. It is therefore **ORDERED** that Plaintiff, **within forty-five (45) days** of the date of this Order, submit completed summons and U.S. Marshal forms for Defendants Case, Nixon, Gaddis, Shonks, Adleta, Allen, and Gilbert. Once the Court receives the requested forms from Plaintiff, the Court will order service of process by the United States Marshal. **Plaintiff is ADVISED that failure to comply with this Order will result in the dismissal of this action for want of prosecution.**

In addition, having found that the remaining claims alleged in the Complaint fail to state a claim upon which relief may be granted, the undersigned recommends that Plaintiff's remaining claims be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's claims be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B), with the exception of Plaintiff's First Amendment retaliation and Eighth Amendment failure-to-protect claims against Defendants Case, Nixon, Gaddis, Shonks, Adleta, Allen, and Gilbert.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

## IT IS THEREFORE ORDERED THAT:

1. The Clerk shall send blank summons and U.S. Marshal forms to Plaintiff to complete for service on Defendants Case, Nixon, Gaddis, Shonks, Adleta, Allen, and Gilbert.

2. Plaintiff shall, **within forty-five (45) days** of the date of this Order, submit completed summons and U.S. Marshal forms for Defendants Case, Nixon, Gaddis, Shonks, Adleta, Allen, and Gilbert. Once the Court receives the requested forms the Court will order service of process, the Complaint and the Supplemental Complaint by the United States Marshal. **Plaintiff is ADVISED that failure to comply with this Order may result in the dismissal of this action for want of prosecution.**

3. Plaintiff shall inform the Court promptly of any changes in her address which may occur during the pendency of this lawsuit.

Date: January 7, 2026    /s/ *Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).